# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

ANGELA SCHUNCEY RICHARDSON,
ADC #712575                                                                                               PLAINTIFF

v.                                        1:16CV00154-KGB-JTK

WENDY KELLEY, et al.                                                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a Hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

Plaintiff Angela Richardson, a state inmate incarcerated at the McPherson Unit of the Arkansas Department of Correction (ADC), filed this pro se 42 U.S.C. § 1983 action alleging improper sexual harassment and conduct and failure to protect by Defendants Courtney Porchia and Alexzandria Cofield (Doc. No. 8). Defendants Kelley, State of Arkansas, and Arkansas Department of Correction were dismissed on July 2, 2018. (Doc. No. 53)

This Court held an Evidentiary Hearing on August 25, 2021. Also pending before the Court is Plaintiff's Motion for Default Judgment against Defendant Cofield (Doc. No. 66).

### II. Amended Complaint

Plaintiff alleged that on January 23, 2016, Defendant Cofield called her to medical, where they held a brief conversation with one of the pregnant inmates and the nurse, Defendant Porchia, who allowed Plaintiff to feel the baby kicking. (Doc. No. 8, p. 1) Defendant Porchia asked Plaintiff to stay around and talked with Plaintiff about having attended Plaintiff's night club and mutual friends with whom they were acquainted. (Id.) Porchia and Cofield hid Plaintiff in the inmate

2

restroom in order to keep other officials from noticing her presence. (Id.) Porchia asked Plaintiff about her sexual needs and whether Plaintiff had a girlfriend. (Id.) The next day, both Cofield and Porchia called Plaintiff back to medical where Plaintiff and Porchia spent hours talking. (Id.) When Cofield left to get donuts, Porchia told Plaintiff she wanted to take care of her sexual needs and kissed and caressed her. (Id.) Cofield laughed when she returned to medical with the donuts. (Id.) Porchia then talked about performing oral sex on her boyfriend and used the donut to demonstrate. (Id.) Porchia later kissed Plaintiff before she left. (Id., p. 2) Plaintiff talked with Porchia again on January 30, 2016, and returned to medical the next day due to dizziness and shortness of breath. (Id.) Porchia checked her vitals and blood pressure and complemented Plaintiff on her stomach and breasts. (Id.) She also fondled Plaintiff's breasts and caressed her vaginal area.(Id.) Plaintiff went along with the conduct to avoid retaliation and saw Porchia again at sick call on February 7, 2016. (Id.) Plaintiff later contacted officers about filing a PREA investigation. (Id.) The Warden ordered that she be placed in isolation without water and stripped of her clothing. (Id., p. 3) Plaintiff suffered from dehydration and diarrhea and was forced to get brown paper towels from an officer in order to wipe herself. (Id.) She was permitted to shower and was provided water to drink on February 8, 2016, and sought psychological treatment. (Id.) On March 2, 2016, she spoke with internal affairs about her allegations and Defendants Porchia and Cofield were terminated from their jobs. (Id.)

### III. Procedural history

This case has an extensive procedural history. Plaintiff filed a thirty-nine page Original Complaint on November 3, 2016, and an Amended Complaint on January 13, 2017, in which she mis-identified the Defendants as Porshe Courtney and Officer Colefield. (Doc. Nos. 3, 8) (This

"mis-identification" led to numerous problems in issuing summons and obtaining service on the Defendants.) On January 17, 2017, this Court issued summons and directed the United States Marshal to serve a copy of Plaintiff's Amended Complaint on the Defendants (Doc. No. 9). Summons was returned unexecuted as to Colefield on February 1, 2017 (Doc. No. 11), and after the Court directed Plaintiff to provide additional identifying information about Defendant, Plaintiff re-identified Defendant as Cpl. Breana Colefield (Doc. No. 13). The Court then issued summons and directed service, but summons was again returned, unexecuted, on March 23, 2017, with a last-known address provided under seal (Doc. Nos. 14, 18). A third attempt at service resulted in a return of executed summons on April 10, 2017, with the certified mail receipt signed by someone named Dennis Lowe (Doc. Nos. 18, 19). On July 11, 2017, Plaintiff notified the Court that the correct name for Defendant is Alexzandria Colefield, and she later was identified by the ADC as Alexzandria Cofield. (Doc. Nos. 24, 22). Summons also initially was returned, unexecuted, as to Defendant "Courtney" on March 6, 2017, June 2, 2017, and August 25, 2017 (Doc. Nos. 15, 20, 32).

On July 19, 2017, this Court ordered Defendant Cofield, who did not file an answer or responsive pleading, to show cause, within fifteen days, why default should not be entered pursuant to FED.R.CIV.P. 55 (Doc. No. 26), and Plaintiff filed a Motion for Summary Judgment, which this Court construed as a Motion for Default Judgment, on August 22, 2017 (Doc. Nos. 26, 30).   The Court appointed counsel for the Plaintiff for the purposes of service on September 12, 2017 (Doc. No. 33) and the Court denied Plaintiff's Default Judgment Motion as premature on December 8, 2017 (Doc. No. 34). Plaintiff also identified Defendant Courtney as Courtney Porchia and summons was reissued and served on her on March 30, 2018. (Doc. No. 37)

4

On May 22, 2018, Defendant Porchia filed Notice of Bankruptcy Proceedings and a Motion to stay the present case pending resolution of those proceedings (Doc. Nos. 44, 45), which this Court granted on May 24, 2018. (Doc. No. 50) Plaintiff's counsel then filed a Motion for Default Judgment against Defendant Cofield on May 22, 2018. (Doc. No. 48). Noting that the original return receipt was not signed by Defendant Cofield, the Court directed that Plaintiff's Motion be personally served on Defendant, and that she respond within twenty days of receipt of that Motion (Doc. No. 51). Although the Motion was served on Defendant Cofield on June 15, 2018, she was not served with a copy of the Order directing her response. (Doc. No. 52) Therefore, on July 10, 2018, the Court ordered that the Marshal personally serve a copy of Plaintiff's Amended Complaint, Motion for Default and Brief, and the Court's July 10, 2018 Order directing Plaintiff to respond. (Doc. No. 54) Despite two attempts, however, summons was returned unexecuted on August 24, 2018. (Doc. No. 55)[1]

In the meantime, summons was reissued and returned to Plaintiff's attorney for service on Defendant, correctly identified by that time as Alexzandria Cofield, on January 30, 2019. (Doc. No. 61) On March 20, 2019, Plaintiff filed with the Court an Acknowledgement of Service of Defendant, and on June 7, 2019, proof of service of Defendant Cofield was filed under seal. (Doc. No. 65) When Defendant Cofield again failed to answer or otherwise respond to Plaintiff's Complaint against her, Plaintiff filed yet another Motion for Default Judgment. (Doc. No. 66) On June 27, 2019, this Court directed Defendant Cofield to respond to the Motion within thirty days,

---

[1] And on July 10, 2019, the Court denied Plaintiff's Motion for Default Judgment based on the fact that the summons was not issued to Alexzandria Cofield, and because there was no record of her signature on the return receipt, as required by Arkansas Civil Procedure Rule 4(d)(8). (Doc. Nos. 56, 69)

and directed the Clerk to forward the Order and the Motions to Defendant at the address filed under seal. (Doc. No. 68) When Defendant again did not respond, the Court directed the Clerk to enter default against her on August 15, 2019, and default was entered on August 16, 2019. (Doc. Nos. 70, 71)

A hearing was scheduled on the Motion for Default Judgment on September 18, 2019. However, due to a mix-up within the Arkansas Department of Correction transportation offices, Plaintiff was not transported to the hearing. Surprisingly, however, Defendant Cofield appeared, pro se, at the hearing. The Court determined at that time that the hearing should be rescheduled until Defendant Cofield retained counsel or filed a response to the default motion. On October 17, 2019, the Court directed Defendant Cofield to respond, within twenty-one days, as to whether she retained counsel and was prepared to proceed with the default judgment hearing. (Doc. No. 78). Cofield responded on November 8, 2019 that she did not have counsel and was not ready for a hearing. (Doc. No. 79) On January 3, 2020, the Court set a second default judgment hearing for February 12, 2020. (Doc. No. 81)

Defendant Cofield appeared at the February 12, 2020 hearing pro se, and both she and Plaintiff testified concerning the allegations set forth in the Complaint. The Court then stayed ruling on the Default Judgment Motion pending resolution of Plaintiff's claim against the other Defendant, Courtney Porchia. (Doc. No. 85) Having been advised that Defendant Porchia's bankruptcy case was closed, the Court lifted the stay of the proceedings against her on February 27, 2020. (Doc. No. 87) An Evidentiary Hearing was held on August 25, 2021. Following the hearing, the Court asked the parties to submit simultaneous briefs.

**IV.    Evidentiary Hearing**

### A.     Plaintiff Angela Richardson

Plaintiff Richardson testified at both the February 12, 2020, and August 25, 2021 hearings. A summation of her testimony is as follows:

At the February 2020 hearing, Plaintiff testified that she is a former nightclub owner who is currently incarcerated at the McPherson Unit of the ADC. In 2016, she was incarcerated at the Hawkins Unit in Wrightsville, where both Defendants worked. On January 23, 2016,[2] Defendant Cofield called Plaintiff out to medical and when Plaintiff arrived, Cofield said she heard Plaintiff had been wearing makeup. Cofield escorted Plaintiff into the examining room where Defendant Nurse Porchia conducted pill call and asked Plaintiff to stay. A pregnant inmate was also in the exam room and Defendant Porchia allowed Plaintiff to listen to the baby's heartbeat. Porchia then talked with Plaintiff about her nightclub and asked Plaintiff if she was involved with anyone. They talked and laughed for several hours and Cofield called Plaintiff back to medical the next day, January 24, 2016. On that day, Defendants Porchia and Cofield and another Officer, Coleman, talked about sexual misconduct at the Unit. Porchia asked Plaintiff if she had a girlfriend, and after Coleman left, she asked Plaintiff who was taking care of her sexual needs. Plaintiff responded that she had not had sex with anybody and Porchia stated that was hard for her to believe because she knew of Plaintiff from when before she was incarcerated.

Porchia then told Plaintiff she wanted to take care of her sexual needs and discussed different sexual things happening with their sex partners. Plaintiff and Defendants ended up in the examining room at some point and Cofield left to get donuts. Porchia talked to Plaintiff about

---

[2] Although Plaintiff's court-appointed counsel at that time referenced the incidents as occurring in June, the complaint and other evidence referenced the events as occurring in January 2016.

knowing her from the nightclub and named people who were familiar to Plaintiff. Porchia also told Plaintiff that she was in a relationship with a girl, S.J., who Plaintiff knew from the nightclub. Before Cofield returned to the room, Porchia kissed Plaintiff and Cofield started laughing when she returned. Porchia then talked about her fiancé and used a donut to demonstrate how she performed oral sex. During this time, Defendants hid Plaintiff in the restroom if other staff members entered the area. At one point Defendants looked at Facebook and Porchia continued to talk about sex. Porchia also gave Plaintiff her address and told Plaintiff she could write her.

About January 28 or 30, 2016, Plaintiff experienced chest pains and dizziness and went to medical, where Defendant Porchia hooked Plaintiff up to the EKG machine. Porchia complimented Plaintiff on her breasts and touched her breasts. Plaintiff later complained to some other officers that she was being sexually harassed and the Warden instructed that Plaintiff be locked up in isolation. She was stripped naked and denied toilet paper and water, even though she experienced diarrhea. Cofield worked segregation during one of these days and ignored Plaintiff's request for toilet paper. When Plaintiff complained that Cofield was working in her area during the investigation into Plaintiff's complaints, Cofield was removed from that area and Plaintiff was transferred to the McPherson Unit. Plaintiff stated that Cofield was aware of what Porchia was doing with her and never reported it or acted to protect her.

At the August 25, 2021 Hearing, Plaintiff presented the Affidavits of two inmates, Felicia Young and Ryeinha Gaines. (Plaintiff's Exhs. 1 and 2) Ms. Young stated that in January 2016 she stood in line with Plaintiff during a pill call and observed that Plaintiff "was very close with Nurse Porshe (sic), weekend nurse at Hawkins Unit. I also saw Richardson and Nurse Porsche in the pill room close up on each other….every weekend Nurse Porsche worked she had Richardson in the

8

pill room talking and laughing with her, it was like they had a relationship going on." Inmate Gaines stated that in February 2016 she was housed in segregation and witnessed that Plaintiff was deprived of water and toilet tissue. She also stated she witnessed Plaintiff treated differently and talked to inappropriately by staff, due to a PREA incident which occurred with a staff nurse.

### B. Defendant Alexzandria Cofield

Cofield appeared pro se at the February 12, 2020 hearing and testified that Plaintiff often dropped pill call requests and asked to visit the infirmary. Cofield, Porchia and another officer, Coleman, talked every day and got along well. Cofield stated that one time Plaintiff was in the room with the two of them in the infirmary and looked on Facebook. Cofield stated she left the room to pick up some donuts and came back to the room and never observed any kissing or fondling between the two. Cofield also stated she never heard them talking sexually but did remember Porchia asked Plaintiff about the club she owned in Little Rock. On that particular day, Plaintiff stayed in medical and talked with Porchia for several hours and Cofield even forgot she was still in there. Cofield stated that the only time she remembered a conversation about sex was once when Officer Coleman also was present and they talked about what Porchia was going to do with her man on Valentine's Day. She denied that she ever saw Porchia use a donut to demonstrate a sexual act. Porchia commented to her about the frequency that Plaintiff "dropped" the pill call and medical requests and she never told Cofield she was sexually interested in Plaintiff. Cofield stated she could not deny Plaintiff's requests to come to the infirmary.

Cofield also remembered that Plaintiff was taken to segregation during the investigation into her harassment complaints so that she would not be around Defendant Porchia. Cofield was not involved with Plaintiff's placement in segregation and although Plaintiff did ask her for tissue

9

at one point, a senior officer told Cofield not to give Plaintiff anything. Cofield later was terminated after Plaintiff filed a PREA complaint.

### C. Defendant Courtny Porchia

Defendant Porchia attended Baptist Nursing School where she obtained her LPN and RN licenses. She worked at the Hawkins Unit of the ADC in the infirmary as a LPN in 2016, one night a week and on weekend days. She described the working environment as laid back, where some inmates could at times come and go without officer escorts. She knew of Plaintiff as the owner of Angie's, a gay nightclub in Little Rock, but never met her before she encountered her at the Hawkins Unit. She initially talked to Plaintiff in the barracks about books Plaintiff wrote about her incarcerations, but never called her into the infirmary other than in response to a sick call request. Cofield called Plaintiff into the infirmary on one occasion to talk about makeup, because Plaintiff typically did not wear makeup and Cofield wanted to see her with makeup. At that time, Defendant Porchia conducted pill call. Another time Plaintiff came to the infirmary for a couple of hours, and Officer Coleman brought up the topic about a male inmate who had coerced a staff member to have sex with him in order to sue the staff member to obtain money. Porchia testified that sex was not discussed at any other time and she denied that she used a donut to demonstrate sex. She admitted that she gave Plaintiff her address because Plaintiff appeared depressed and wanted to return to the McPherson Unit. She received letters from Plaintiff after that, but did not keep them, and did not remember the content of them. At one point, Porchia asked Plaintiff to stop writing her, because it violated policy. The McPherson Unit was home to a dog program which used dogs as therapy for inmates, and neither Porchia nor Plaintiff were fond of the dogs. Porchia remembered that Plaintiff came into the infirmary for sick call and pill call requests but denied she

kissed Plaintiff or touched her in a sexual manner. Porchia did allow Plaintiff to look over her shoulder while looking at Facebook, and on one occasion Porchia had to ask Plaintiff to leave the pill call room because inmates were not allowed in there. Defendant Porchia stated that she later was terminated for allowing Plaintiff into the pill call room.

On one occasion Plaintiff came to the infirmary with a complaint of chest pains and Defendant Porchia hooked her up to an EKG while another male officer waited outside the door. Porchia had to lift up Plaintiff's breasts in order to place the EKG pads along the breast line, but she denied that she touched Plaintiff's breasts in any other manner other than to place and remove the patches.

### D.   Amanda Beasley

Ms. Beasley currently is an inmate at the Federal Medical Center in Ft. Worth, Texas. She met Plaintiff when they both were incarcerated at the Hawkins and McPherson Units of the ADC. In 2016, both were housed at the Hawkins Unit and Plaintiff Richardson was not happy there because of the dog program. On one occasion when the two were cooking together, Richardson told her of a plan to fabricate a sexual assault charge against a staff member in order to obtain money and a transfer out of the Unit. Beasley wrote a statement about this conversation on February 9, 2016, after she was questioned during the investigation and wanted to tell the truth.. (Def. Exh. 2) She also wrote another statement on February 11, 2016, after they both were transferred back to the McPherson Unit, and asked not to be housed with Plaintiff because she feared retaliation for the prior statement. (Def. Exh. 4) Beasley did not know if Plaintiff and Defendant Porchia actually had sex.

### E.   Ariel McDaniel

Ms. McDaniel is an inmate at the McPherson Unit who briefly dated Plaintiff. Plaintiff discussed Defendant Porchia with McDaniel and told her that the allegations were not real and that she made up the story to get back to her ex-girlfriend, "R.B." at McPherson. Richardson also wanted to find a way to get an attorney to help get her and "R.B." released from prison. McDaniel wrote former ADC Director Wendy Kelley about Plaintiff's actions because she knew Porchia when they were at the Hawkins Unit and she was bothered by Plaintiff's attempt to set her up.   In her Affidavit, dated May 14, 2019, McDaniel stated that Plaintiff told her she made up the story, that she lied about everything, and tried but failed to get Defendant Porchia to kiss her. (Def. Exh. 6)

### F. Susan Townsend

Ms. Townsend is an Internal Affairs Investigator for the ADC, who is a certified police officer and certified in voice stress analysis (CVSA). She is trained in investigatory methods, specifically sexual assault and PREA (prison rape elimination act) complaints. According to the Internal Affairs Final Report she submitted on March 4, 2016, she considered the CVSA results, interviews and written statements of both Porchia and Richardson, medical reports and the unit investigation. (Def. Exh. 1) In her interview with the Plaintiff, Plaintiff told her she had sex with Porchia and that they touched each other while in the medical rooms. Plaintiff also told Townsend that she was famous and had written a book. Townsend testified that Plaintiff's statements were inconsistent and because her story changed several times during the interview, she was not able to discern the facts until she conducted a CVSA with Plaintiff. Plaintiff stated to her that the two did not kiss, but were going to, and that Porchia fondled her breast when she moved her bra to conduct the EKG. Townsend stated that the CVSA indicated that Plaintiff was deceptive when Richardson

12

stated she and Porchia kissed, and after further questions, Plaintiff admitted that they did not kiss. She also noted that two questions reflected answers with no deception, that sexual contact occurred and Porchia touched her breasts. However after additional questions, Plaintiff explained that she considered the sexual contact to be when Porchia attached the heart monitor pads to her breast areas. Townsend concluded that the PREA complaints were unfounded, but that Defendant Porchia did act inappropriately by hanging out with the inmate. She also did not refer the matter to the state police. Townsend stated that the CVSA results were used as a tool in her investigation, and she based her conclusions on Plaintiff's answers that the two did not kiss or engage in sexual touching.

### G. Post-Trial Briefs

#### 1) Defendant Porchia (Doc. No. 138)

Defendant noted the inconsistencies between Plaintiff's testimony at the default judgment hearing and the statements given during the PREA investigation to Susan Townsend and the other witnesses' accounts. Defendant also stated that Plaintiff failed to prove any sexual harassment by her, or that any interactions were unwelcome or involuntary, so as to support an Eighth Amendment claim, citing Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997).

#### 2) Plaintiff Richardson

As of this date, Plaintiff has not filed a post-trial brief. At the August 25, 2021 hearing, the Court gave the parties ten days in which to submit post-trial briefs. In addition, on September 1, 2021, the Court granted Plaintiff's Motion to Clarify and stated that post-trial briefs were due no later than Friday, September 10, 2021. (Doc. No. 135)

## V. Applicable Law

### A. Sexual harassment/assault

Sexual harassment or abuse can, "in certain circumstances, constitute the unnecessary and wonton infliction of pain." Freitas, 109 F.3d at 1338 (internal quotation omitted). However, "[o]nly severe or repetitive sexual abuse … rises to the level of an eighth amendment violation," and isolated incidents of inappropriate conduct do not constitute a constitutional violation. Maxwell v. Talley, No. 4:07cv00669 SWW/BD, 2010 WL 3270757 at *1-3 (E.D.Ark. 2010), report and recommendation adopted, No. 4:07cv00669 SWW/BD, 2010 WL 3270758 (E.D.Ark. 2010), aff'd as modified, 419 F.App'x 697 (8th Cir. 2011), citing Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 2000) and Boxer X v. Harris, 437 F.3d 1107 (11th Cir. 2006). To prove an Eighth Amendment violation, Plaintiff must show "as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Freitas, 109 F.3d at 1338.

In this case, the Court finds Plaintiff's testimony not credible,[3] and that she consistently changed her story of the events when questioned during the Internal Affairs Investigation. She admitted to investigator Townsend that Porchia did not kiss her and touched her breasts only when she attached and removed the pads associated with the EKG test. Two separate credible witnesses testified to Plaintiff's unhappiness at the Hawkins Unit, her desire to be transferred, and her false allegations against Defendant Porchia. Although the Court does not find Defendant Porchia's account of the events entirely believable, the evidence supports only a finding that any sexual activity was limited to inappropriate discussions between the employees and the inmate. Such

---

[3] "Credibility determinations are uniquely within the province of the trier of fact and may 'virtually never' be clearly erroneous." Weber v. Block, 784 F.2d 313, 316 (8th Cir. 1986). In addition, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). See also Zahn v. Nygaard, 989 F.3d 10790, 1072 (8th Cir. 2021).

14

conversations, however, do not rise to the level of an Eighth Amendment violation.

### B. Default

The Eighth Circuit "has not articulated specific factors that must be considered in determining whether a Rule 55(b) motion for default judgment for failure to defend should be granted. Rather this Court has noted generally that default judgment is appropriate if the conduct is willful, contumacious or intentional." Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 856, 857 (8th Cir. 1996). The Ackra court also noted that "pro se representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure." Id. at 857.

Although the defaulted party is deemed to have admitted a complaint's well-pleaded allegations of fact upon entry of default, "'default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover,'" and "the court must determine whether the well-pleaded allegations in [the] complaint support the relief sought." Ryan v. Homecomings Financial Network, 253 F.3d 778, 780 (4th Cir 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) (other citations omitted.) "Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief….[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Wright & Miller, 10A FEDERAL PRACTICE & PROCEDURE § 2688.1 (4th ed.)

Given the Court's conclusion, above, that Defendant Porchia's actions did not violate Plaintiff's Eighth Amendment rights, the Court likewise finds that Defendant Cofield did not fail to protect Plaintiff from any harm; therefore, her actions did not violate Plaintiff's constitutional

rights.

## VI. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's Motion for Default Judgment (Doc. No. 66) be DENIED.

2. Defendants have Judgment over Plaintiff on her claims against them.

3. Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 14th day of September, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE